AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

1. Your Affiant is Investigator Hina L. Rodriguez of the Metropolitan Police Department in Washington, D.C. Being duly sworn, I hereby state the following in support of the Application for a Seizure Warrant for:

   **ALL FUNDS ON DEPOSIT IN BANK OF AMERICA SAVINGS ACCOUNT NUMBER xxxxxxx5707 IN THE NAME OF DWAYNE M. EASTERLING, UP TO $52,892.00.**

2. Your Affiant has been employed with the Metropolitan Police Department (MPD) in Washington, D.C., for the past eighteen years. Six years in the Seven District as a patrol officer, seven years in the Recruiting Branch as a background investigator and for the past five years, I have been assigned to the Narcotics and Special Investigations Division, Asset Forfeiture Unit. While assigned to the Asset Forfeiture Unit, I have participated in numerous financial investigations, resulting in the seizure of U.S. currency, motor vehicles and other items of value. I have received classroom training in Financial Investigations and Money Laundering. Your Affiant also has assisted in numerous search warrants for narcotics (marijuana, cocaine, methamphetamine (METH), methylenedioxymethampetamine (MDMA), gamma-hydroxy butyric acid (GHB) and ketamine. Based upon my training and experience, your Affiant has learned the following: (a) I have become familiar with many methods used to package, manufacture, transport, store and distribute controlled substance; (b) that narcotics traffickers must maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics business; (c) that it is common for a narcotics traffickers to maintain for immediate use one or more firearms for the purpose of protecting their narcotics business; (d) that it is common for drug traffickers to distribute or possess more than one type of narcotic; (e) that when narcotic traffickers amass large proceeds from drug sales they attempt to legitimize these profits through money laundering activities; (f) that to accomplish their goals, narcotic traffickers utilize (including but not limited to) domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency; (g) that sale of cocaine and other controlled dangerous substances generate large quantities of United States currency in small denominations (commonly referred to as "street money"); (h) that it is common for drug dealers to separate their "street money" by denominations and put this currency in rubber banded stacks in varying thousand dollar increments to facilitate quick counting; (i) that the Currency Transaction Report (CTR) IRS Form 4789, which is required to be completed and filed with the IRS by all financial institutions on every currency transaction that traffickers when they attempt to negotiate their illegal profits at a financial institutions on every currency transaction that exceeds $10,000, causes tremendous problems for narcotics traffickers when they attempt to negotiate their illegal profits at financial institutions; (j) that in order to evade the filing of a CTR,

narcotic traffickers often "structure their currency transactions so that no one transaction exceeds $10,000 or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency; (k) that the courts have recognized that unexplained wealth is probative evidence and crimes motivated by greed, in particular trafficking in controlled substances; (l) that narcotics traffickers commonly have in their possession, on their persons, at their residences and/or their businesses, firearms including, but not limited to, handguns, pistol revolvers, rifles shotguns, machine guns and other weapons that are used to protect and secure narcotics traffickers' property (which may include, but not be limited to, narcotics, jewelry, narcotic paraphernalia, books, records and U.S. currency.

3. I allege that the facts enumerated below establish that there is probable cause to believe that the funds described in paragraph 1 of this affidavit are directly or indirectly traceable to cash proceeds of illegal drug trafficking and/or constitute property involved in money laundering, and that such funds are therefore subject to seizure under Title 21, United States Code, Sections 881(a)(6) and (b) and Title 18, United States Code, Section 981(a) and (b).

## Nature of Investigation

4. On January 14, 2006, at approximately 0202 hours, Officer Ryan Klipp was called to respond to a dog complaint at xxxxxxxxxxxxxxxxxxxxxx, Washington, D.C. Officer Klipp responded to the location, rang the door bell and knocked on the door. An individual later identified as DWAYNE EASTERLING opened the front door. Officer Klipp immediately smelled a strong odor of marijuana. EASTERLING opened the door further, and Officer Klipp saw smoke. Officer Klipp detained EASTERLING. Officer Klipp entered the premise, smelled the strong odor of marijuana and saw a smoke trail. Officer Klipp then followed the smoke trail through the house which lead him to an open basement door and then to the basement. Officer Klipp immediately saw in plain view a brown marijuana cigarette, which was still burning on a coffee table and a black handgun on a couch. EASTERLING was placed under arrest.

5. A records check through computerized reporting systems indicates that DWAYNE M. EASTERLING has been arrested numerous times, including for illicit narcotics and weapon possession offenses, and for unlawful drug distribution.

6. Members of the Fourth District Focus Mission Unit responded to the residence. The defendant signed consent to search form and members of the Fourth District Focus Mission Unit began to search the premise. Upon discovering a substantial amount of marijuana and U.S. currency, the search ceased. At this time, one of the officers prepared a search warrant for xxxxxxxxxxxxxxxxxxxxxxx, Washington, D.C.

7. On January 14, 2006, a Superior Court for the District of Columbia Judge authorized a

search warrant for xxxxxxxxxxxxxxxxxxxxxx  On January 14, 2006 the search warrant was executed.  Recovered within the premise were:  a clear sandwich bag containing twenty-nine (29) white pills (suspected MDMA); approximately two hundred and thirty-one grams of marijuana; one Glock 26 pistol with an extended magazine; one Baretta 9mm pistol; one SKS Sporter 7 rifle with two magazines; five scales; assorted jewelry; a total of $57,037.72 in U.S. currency; several pieces of electronic equipment; and several personal documents that showed that DWAYNE M. EASTERLING resides at xxxxxxxxxxxxxxxxxx, maintains a second residence at xxxxxxxxxxxxxxxxxxx, Washington, D.C. 20011, and (as discussed below) appears to spend more money than he legitimately earns.  Also found was a Bank of America statement dated as recent as January 6, 2006 with EASTERLING'S name depicted on the bank statement.  My investigation has revealed that EASTERLING stills maintains open checking and savings accounts at Bank of America.

8. Documents recovered within xxxxxxxxxxxxxxxxxxxxxxx, and public records, reveal that EASTERLING is the sole owner of xxxxxxxxxxxxxxxxxxxxxxx, and that he made regular mortgage (monthly) and insurance payments on the Kennedy Street property during the period when his only apparent source of income was his drug distribution activity.

9. At the time of his arrest, EASTERLING indicated that he worked at Ourisman Honda, but he subsequently admitted that he has been distributing narcotics in the District of Columbia since the 1990's.

10. Maryland wage history records indicate that Ourisman Honda of xxxxxxxxxxxxxxxxxx, Bethesda, Maryland reported $2,116.00 in wages paid to EASTERLING in January of 2005.  On January 19, 2006, your Affiant called Ourisman Honda.  An employee of the dealership stated that EASTERLING only worked there from December 30, 2004 to February 25, 2005.

11. According to the Deed filed with District of Columbia Land Records, EASTERLING purchased the residence located at xxxxxxxxxxxxxxxxxx NE, Washington, DC., on July 27, 2004.  At check of commercial database records indicates that EASTERLING made a down payment of $53,000.00 and received financing in the amount of $212,000.00 from Pinnacle Financial for the balance of the sale price of $265,000.00 for the purchase of the xxxxxxxxxxxxxxxxxxxxxx, Washington, D.C. residence.

12. Records, including those seized from the xxxxxxxxxxxxxxxxxxxxxx, Washington, D.C. residence, indicate that EASTERLING obtained refinancing from INDYMACBANK, F.S.B. in the amount of $270,000.00 for his Xxxxxxxxxxxxx residence.  Settlement documents showed that $212,787.51 was the pay off amount for EASTERLING'S first mortgage with Homecomings Financial.  After first mortgage, refinance and settlement deductions, $52,892.00, the remaining balance, was paid to

EASTERLING as cash-out after settlement. According to BANCSTAR Title, LLC, as a result of his refinancing of the Xxxxxxxxxxxxx property, a check was issued in the amount of $52,892.00 to EASTERLING on December 6, 2005.

13. According to information obtained from Bank of America, EASTERLING deposited the $52,892.00 check into his Bank of America savings account (identified by number in paragraph 2, above), in December 2005.

14. Based on your Affiant's training and experience, your Affiant believes that there is probable cause to believe that the funds EASTERLING used to purchase and finance his Xxxxxxxxxxxxx property were proceeds from EASTERLING'S narcotic distribution. In particular, EASTERLING is an admitted drug dealer with no apparent legitimate income sufficient to support his purchase of the Xxxxxxxxxxxxx property, or to support the subsequent loan payments he made to retain his interest in the property, and to refinance his purchase of the property. I am informed that numerous courts have held that the government may rely on evidence that an individual was engaged in drug trafficking and had insufficient legitimate income to prove that money involved in transactions constituted drug proceeds. See, e.g., United States v. Bradford, 246 F.3d 1107 (8th Cir. 2001); United States v. Hardwell, 80 F.3d 1471 (10th Cir. 1996).

15. Therefore, your Affiant respectfully submits that there is probable cause to believe that in Bank of America account described above are proceeds traceable to EASTERLING'S illicit drug trafficking and/or property involved in his laundering of his drug proceeds through his purchase and financing of his Xxxxxxxxxxxxx property.

_____
Hina L. Rodriguez
Investigator, Metropolitan Police Department
Washington, D.C.

Subscribed and sworn to before me this _____ day of January, 2006.

_____
United States Magistrate Judge